UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | CRIMINAL NO. 13-165 |
| TEVON HARRIS<br>Defendant. | § § § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and Sherri L. Zack, Assistant United States Attorney, and Defendant, Tevon Harris, and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1. Defendant agrees to plead guilty to Count(s) One and Two of the Indictment. Counts One and Two charge Defendant with Sex Trafficking, in violation of Title 18, United States Code, § 1591(a), (b)(2) and 2. Defendant, by entering this plea, agrees that he/she is waiving any right to have the facts that the law makes essential to the punishment either charged in the Indictment or proven to a jury or judge beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, § 1591(a), (b)(2) and 2, is a term of imprisonment of not less than 10 years up to Life and a fine of not more than $250,000.00. Additionally, Defendant shall receive a term of supervised release after imprisonment of at least 5 years up to Life. Title 18, United States Code, §§ 3559(a) and 3583(b). Defendant acknowledges and understands that if he/she should violate the

conditions of any period of supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. Title 18, United States Code, §§ 3559(a) and 3583(e)(3). Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

3. The defendant understands that under the Sex Offender Registration and Notification Act, the defendant must register and keep such information current in the jurisdictions where the defendant resides, is employed, and is a student. The defendant further understands that the requirement to keep the registration current includes informing such jurisdictions not later than three (3) business days after any change of the defendant's name, residence, employment or student status. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, specifically, Title 18, United States Code, Section 2250, as well as applicable state statutes.

## Mandatory Special Assessment

4. Pursuant to Title 18, United States Code, § 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

5. Defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status if he/she is not a citizen of the United States. Defendant understands

that if he/she is not a citizen of the United States, by pleading guilty he/she may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

### Waiver of Appeal

6. Defendant is aware that Title 28, United States Code, § 1291, and Title 18, United States Code, § 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant knowingly and voluntarily waives the right to appeal the conviction and the sentence imposed, or the manner in which the sentence was determined. Additionally, Defendant is aware that Title 28, United States Code, § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. Defendant knowingly and voluntarily waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding. In the event the Defendant files a notice of appeal following the imposition of the sentence, the United States will assert its rights under this agreement and seek specific performance of this waiver.

7. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that he/she may have received from his/her counsel, the United States, or the Probation Office, is a prediction, not a promise, and such estimate **did not induce his/her guilty plea** and is binding on neither the United States, the Probation Office, nor the Court. The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the Sentencing

Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

**The United States' Agreements**

9. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Counts One and Two of the Indictment, specifically subsection (b)(2) and persists in that plea through sentencing, and if the Court accepts this Plea Agreement, the United States will agree to abandon that portion of the indictment charging the defendant under subsection (b)(1) at the time of sentencing;

(b) At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he/she receive a two (2)- level downward adjustment under § 3E1.1(a) of the Sentencing Guidelines should Defendant accept responsibility as contemplated by the Sentencing Guidelines (U.S.S.G.);

(c) If Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States may move for an additional one (1)-level downward adjustment based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding his/her role in the offense.

**Agreement Binding - Southern District of Texas Only**

10. The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Indictment. This

Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney. The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

**United States' Non-Waiver of Appeal**

11. The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and Title 18, United States Code, § 3553(a); and

(a) to appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

12. Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines, which are only advisory, as well as the provisions of Title 18, United States Code, § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court, and that the sentence imposed is within the

discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

### Rights at Trial

13. Defendant represents to the Court that he/she is satisfied that his/her attorney has rendered effective assistance. Defendant understands that by entering into this Agreement, he/she surrenders certain rights as provided in this Plea Agreement. Defendant understands that those rights include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for Defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court.

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he/she could testify on his/her own behalf.

### Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he/she is guilty of the charges contained in Count(s) One and Two of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

On 1/31/2012, officers were called to a Motel 6 on 34th street in Houston by the parents of T.L., a 17 year old female. They stated that they, and a friend of T.L.'s, received several text messages from T.L. stating she was being sexually assaulted by Harris and giving her location. The first officer on scene entered the hotel room and found Harris in bed with three females including the minor victim, T.L. Harris fled on foot, dove off the second floor balcony and was eventually apprehended after the officer deployed his taser numerous times.

On 1/31/2012, T.L., DOB 4/15/1994, reported to law enforcement that she met Harris on Facebook. She stated that on Friday, 1/28/2012, Harris came to Sealy, Texas to pick her up and that he had a driver. They all ended up in a ~~Super 8~~ Motel outside of Houston on I-10. ~~They watched movies and Harris forced her to have sex with him.~~ She refused and he physically assaulted her in addition to sexually assaulting her. She asked to go home and he refused to take her back to Sealy. Harris took T.L. and two other females, know to her as "Snow" and "Rabbit" to San Antonio. Later it was determined that "Snow" is Savannah Clifton and "Rabbit" is Darrian Washington. A Texas ID found in the hotel room confirmed the identity of Clifton in whose name the room was rented.

In San Antonio, Harris had them staying in a Gateway Motel and a Motel 6. T.L. reported that the other two girls had 6 or 7 customers a day. Harris called the girls "his bitches," "whores," and "my sluts." T.L. stated Harris forced her to have sex with an unknown man for money. She stated she charged him 100 "roses" for her services. She learned from being with Harris and the other females that "roses" was code for dollars. This is what was posted in her ads on Backpage. This is common terminology in the world of prostitution. T.L. stated that she did not touch the money; it was placed on the

7

counter by the client and picked up by Harris. Harris watched the entire transaction and sex act from the window. T.L. was told she did a poor job with the client and Harris refused to give her any food.

T.L. said upon returning to Houston, they checked into the Motel 6, on Tuesday morning, 1/31/2012. They returned to Houston because the other girls were receiving calls from clients requesting their services in the Houston area. That morning T.L. was pressured into using marijuana by Harris. The other girls had several customers that day. Harris brought a man to the room for T.L. to have sex with for money. ~~T.L. told the man no and that he should take his money and leave. When Harris found out, he grabbed her and shoved her head into a brick wall. He warned her, "bitch don't play with my money."~~ [handwritten: T.L.H / SC2]

In addition to being shoved into the wall and forced to have sex, T.L. reported that Harris had a cane with a sword in it. That he took the girls to a strip club and made them walk in a straight line with their heads down and he would hit them with the cane on their legs if they did not follow his instructions. T.L. was told by the other girls that they could not look at other men as that would be disrespecting Harris. T.L. stated she knew Harris posted ads for her on Backpage at both locations in San Antonio. When Harris found out she sent a client away without making him any money he punched her in the stomach and told her not to play with his money. She stated that for the four days she was with Harris she was not fed. She was given alcohol and drugs. She was told that she did not deserve to eat as she was not doing what he told her. She provided law enforcement with a lot of detail about how she was to conduct business, condoms, roses, etc.

8

T.L. said Harris forced her to have sex with him a few minutes before the police arrived. She stated she told him to stop, told him it hurt but he continued to force his penis into her vagina.

It was learned from T.L.'s parents that she has been home schooled and has never been in trouble with law enforcement. Hotel records, Backpage ads and the testimony of her parents and friend support T.L.'s version of events. The use of the internet to post the ads, staying in hotels that are national chains, use of cell phones to receive calls all establish that Harris' activities were in or effecting interstate commerce though she never left Texas.

S. A., DOB 2/5/96, was interviewed by law enforcement and reported that she met Harris on Facebook. Harris told her she could make a lot of money modeling. When they met to discuss this Harris told her she should prostitute to pay for her modeling portfolio. S.A. stated Harris used pictures from her Facebook page to post ads on the internet. He told her she would go by "Layla" gave her a phone and told her to talk to the unknown males that call. Harris gave her instructions on what to charge, how to handle the money, and how to schedule the dates. Harris took all the money she earned.

When S.A. figured out that there was not going to be a modeling job and she was never going to get any of the money she earned S.A. told Harris she wanted to home. Harris threw her on the bed and began to choke her. He stopped right before she passed out. Harris ripped the hotel phone out of the wall, ripped the towel bar off the wall and beat her with the towel bar. When Harris exited the room after beating her the police were there to arrest him.

When S.A. was interviewed the first time she stated that Harris sexually assaulted

9

her but would not admit that she was forced/coerced into prostitution. However, a sexual assault exam was performed on her and DNA from a male besides Harris was found. This person was identified by a CODIS hit.

With S.A., Harris used the same basic game plan that he used with T.L.. He stayed in national chain hotels, he used cellular telephones, he posted ads of the victims on line thus effecting interstate commerce. He used violence and sexually assaulted both minors.

## Breach of Plea Agreement

15. If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals or disposes of assets in violation of this Plea Agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

## Restitution, Forfeiture, and Fines

16. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he/she will make a full and complete disclosure of all assets over which he/she exercises direct or indirect control, or in which he/she has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a

transfer of property in which he/she has an interest, unless Defendant obtains the prior written permission of the United States.

17. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) by the deadline set by the United States, or if no deadline is set, prior to sentencing. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

19. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

**Restitution**

20. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss of at least $ _____. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s).

Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

**Fines**

21. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

22. This written Plea Agreement, consisting of __15__ pages, including the attached addendum of Defendant and his/her attorney, constitutes the complete Plea Agreement between the United States, Defendant, and his/her counsel. No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement. Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

23. Any modification of this Plea Agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on April 9, 2014.

_____
Tevon Harris
Defendant

Subscribed and sworn to before me on April 9, 2014.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Kenneth Magidson
United States Attorney

By: _____      _____
Sherri L. Zack                                              Wendle Van Smith
Assistant United States Attorney                Attorney for Defendant
Southern District of Texas
Telephone: 713-567-9374

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § | CRIMINAL NO. 13-165 |
| | § | |
| TEVON HARRIS | § | |
| Defendant. | § | |

## PLEA AGREEMENT - ADDENDUM

I have fully explained to Defendant his/her rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> and <u>Policy Statements</u> and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this Plea Agreement with Defendant. To my knowledge, Defendant's decision to enter into this Agreement is an informed and voluntary one.

_____    _9/9/14_____
Attorney for Defendant                Date

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case. I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this Agreement and I voluntarily agree to its terms.

_____     __4/9/14_____
Defendant                         Date